UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANIEL JONES,

                Plaintiff,

          -against-

DR. RAUL ULLOA; SGT. SORRENTINO;
P.A. STODDARD; KARL VOLLMER; SGT.
MEADE; SERGEANT MABRA; JOHN DOES
12-20; CAPTAIN HERMANS; DR. JANE
DOE; JOHN DOE ORTHOPEDIC; LISA
NURSE PRACTITIONER; C.O. FICAROTTA,

              Defendants.

19-CV-9553 (LLS)

ORDER OF DISMISSAL

LOUIS L. STANTON, United States District Judge:

      Plaintiff, who is incarcerated in Attica Correctional Facility in the custody of the New

York State Department of Corrections and Community Supervision (DOCCS), is proceeding *pro*

*se* and *in forma pauperis*. Plaintiff filed this complaint under 42 U.S.C. § 1983, alleging that

Defendants failed to provide constitutionally adequate medical care, from the time he fell on

January 24, 2018, at Westchester County Jail, until he was transferred into the custody of

DOCCS, on or about April 9, 2018. The Court directed Plaintiff to amend his complaint to

address deficiencies in his original pleading. Plaintiff filed an amended complaint on January 20,

2021, and the Court has reviewed it. The action is dismissed for the reasons set forth below.

## STANDARD OF REVIEW

      The Prison Litigation Reform Act requires that federal courts screen complaints brought

by prisoners who seek relief against a governmental entity or an officer or employee of a

governmental entity. See 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's *in forma*

*pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a

claim upon which relief may be granted, or seeks monetary relief from a defendant who is

immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint if the court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The Supreme Court has held that under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

The following allegations are from Plaintiff Daniel Jones's amended complaint. On January 24, 2018, the stairs at WCJ were slippery because someone left a wet mop at the top of

the stairs, and he fell. (ECF 13 at 7.) Medical Director Ulloa sent Plaintiff to the WCJ clinic
rather than sending him to an outside hospital. The x-rays from the WCJ clinic showed that
Plaintiff had not broken any bones, but on January 25, 2018, Nurse Practitioner Veronica
provided Plaintiff with crutches and arranged for him to go to an outside hospital, so that they
could "rule our possible rupture or tear." (*Id.*)

At the hospital, Plaintiff received Percocet for pain, and more x-rays for his ankle and
foot. (*Id.*) Dr. Jane Doe at Westchester County Medical Center "stated [that Plaintiff] had a
sprained ankle." (*Id.* at 8.) Plaintiff told Dr. Jane Doe that he already knew that he didn't have
any broken bones but that he had come to the hospital "to rule out any possible Achilles tendon
injuries, which can't be determined by x-ray." (*Id.*) Dr. Jane Doe asked whether Plaintiff would
"like her to wrap [his] foot or not," and stated that she had other patients to see. He "also heard
say that she hates inmates." (*Id.* at 9.) Plaintiff was "returned to the jail with the outside hospital
neglecting his medical needs." (*Id.*)

Plaintiff contends that Nurse Practitioner Lisa or Dr. Ulloa at WCJ should have "sent him
back" to the hospital a second time after Dr. Jane Doe "declared 'sprained ankle' without the
proper tests." (*Id.*) Plaintiff asked Nurse Practitioner Lisa for stronger pain medication but she
told him that Dr. Jane Doe had prescribed only Tylenol for pain; Naproxen was recommended,
even though Plaintiff stated that "it did nothing for [him] in the past." (*Id.*)

A few weeks later, on February 12, 2018, Correction Officer Ficarrotta attempted to put
leg irons on Plaintiff. Even though Plaintiff was using a cane and had taken previous medical
trips without leg irons, Officer Ficarrotta and Sergeant Mabra told Plaintiff that he could not
travel without leg irons on both legs. Plaintiff filed a grievance. On February 23, 2018, Plaintiff's
grievance was denied; the grievance denial included a statement from Sergeant Mabra stating

that he had asked to see the injury but Plaintiff "adamantly refused," which Plaintiff states is false. (*Id.* at 10.) In denying Plaintiff's grievance, Assistant Warden Vollmer further noted that "there are absolutely no medical restrictions . . . which preclud[e] the application of leg restraints on your person." (*Id.* at 11.)

On an unspecified date, Plaintiff states that he saw an orthopedist at WCJ who stated that Plaintiff "had sustained a tear" and that Plaintiff "should not have any limitations on [his] injury." (*Id.*) Plaintiff told the orthopedist that he had been unable to attend a medical appointment on February 12, 2018, because "he could not bear the leg irons." (*Id.*) The orthopedist said that "he would personally put in [Plaintiff's] medical records 'not to put leg restraints on [Plaintiff's] injury" but that this was never done. (*Id.*)

Plaintiff obtained his medical records on March 27, 2018, and found two false statements. First, there is a notation that Plaintiff had "inflicted self-harm . . . drawing blood and had to be restrained," and second, there is a statement that on January 24, 2018, Plaintiff "reported a basketball related injury" at WCJ. (*Id.* at 11-12.) Plaintiff contends that he "realized that a cover-up was underway" because these "lie[s]" aim to "creat[e] doubt to [Plaintiff's] cause of injury" in order to "undermine any future suits." (*Id.* at 11-12.) Plaintiff filed a grievance about this erroneous information in his medical records, but Captain Hermans denied Plaintiff's grievance on the ground that Physician's Assistant Stoddard had entered this information in Plaintiff's medical record in error due to a computer glitch.

A little more than two months after Plaintiff's January 24, 2018 injury, Plaintiff was transferred on April 9, 2018, from WCJ to the custody of DOCCS. Plaintiff contends that unknown John or Jane Doe correction officers at Auburn Correctional Facility in Cayuga County denied him physical therapy on multiple occasions in 2018 and 2019. (*Id.* at 12.) Even though

4

Plaintiff states that he never refused to attend physical therapy, he was not called for physical therapy visits on certain days, and on those dates, it was "marked down as a 'no show'" in his records. (*Id.*) Plaintiff notes that for mental health visits, for example, inmates must inform the mental health provider in person that the inmate refuses the visit but that a similar protocol has not been implemented for physical therapy. As a result, Plaintiff missed visits and months passed before he "got back in" to physical therapy.

Plaintiff states that at some point, an unidentified physical therapist told him that he had "sustained a torn Achilles tendon." (*Id.* at 13.) Plaintiff provides conflicting information about the current status of his injury. He states that "it's fully healed now" but also states that he "still ha[s] pain and [his] leg is still swollen years later." (*Id.*) Plaintiff indicates that his leg will be "swollen permanently unless the State send[s him] to have surgery" because he has "sca[r] tissue" that needs to be removed," though he does not specify whether he received a medical opinion to this effect. (*Id.*)

Plaintiff brings suit against Jane Doe doctor from the Westchester Medical Center emergency room; Nurse Practitioner Lisa from WCJ; Correction Officer Ficarrotta; Sergeants Mabra and Sorrentino; Assistant Warden Karl Vollmer; WCJ Medical Director Ulloa; John Doe orthopedist; PA Stoddard; Captain Hermans; and John or Jane Doe correction officers at Auburn Correctional Facility, operated by DOCCS.

## DISCUSSION

### A.   Claims Arising at Auburn Correctional Facility

In Plaintiff's amended complaint, he includes a new claim that John or Jane Doe correction officers at Auburn Correctional Facility in Cayuga County denied him physical therapy on multiple occasions on unspecified dates in 2018 and 2019. (*Id.* at 12.) Venue for this claim is not proper in this district because the events giving rise to the claim took place in

Cayuga County, and Plaintiff alleges that the John or Jane Doe Defendants reside outside this district. *See* 28 U.S.C. § 1391(b)(1)-(2). Cayuga County is in the Northern District of New York, 28 U.S.C. § 112(a), and venue does lie in the Northern District of New York under § 1391(b)(2).

Rules 18 and 20 of the Federal Rules of Civil Procedure govern joinder of claims and parties, respectively. Rule 18 permits a plaintiff to join as many claims as he has against a particular defendant. *See* Fed. R. Civ. P. 18(a). But under Rule 20, a plaintiff may not pursue unrelated claims against multiple defendants in the same suit. *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 167 (S.D.N.Y. 2009) ("[T]he mere allegation that Plaintiff was injured by all Defendants is not sufficient to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a)."); *Webb v. Maldanado*, No. 3:13-CV-144 (RNC), 2013 WL 3243135, at *3 (D. Conn. June 26, 2013) ("Unrelated claims against different defendants belong in different suits . . ."). Rule 21 of the Federal Rules of Civil Procedure provides that "on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21.

The Court severs Plaintiff's claims against John or Jane Doe defendants in connection with Plaintiff's physical therapy at Auburn Correctional Facility and transfers such claims under 28 U.S.C. § 1406 to the United States District Court for the Northern District of New York.

**B.    Deliberate Indifference to Serious Medical Needs**

The Court notes that, in addition to seeking compensatory and punitive damages in this action, Plaintiff also seeks injunctive relief, in the form of "surgery to repair [his] leg." (ECF 13 at 8.) Plaintiff is currently incarcerated in Wyoming County in the custody of the New York State DOCCS, but Plaintiff's claims in this action are against individuals working at WCJ, operated by the County of Westchester County. "[A]n inmate's transfer from a prison facility generally moots claims for . . . injunctive relief." *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d

Cir. 2006). Because Plaintiff is no longer in the custody of Westchester County DOC, his claims against WCJ officials for injunctive relief, that is, for certain medical procedures, are moot and must be dismissed.[1] The Court considers below whether Plaintiff states a claim for damages against any defendants for their actions or failures to act when he was at WCJ.

Plaintiff is currently a convicted prisoner but may have been a pretrial detainee during some of the period from January 24, 2018, when he was injured, until April 9, 2018, when he was transferred out of WCJ custody to serve his sentence. If Plaintiff was a pretrial detainee during the events giving rise to his claims, the Due Process Clause of the Fourteenth Amendment governs his § 1983 claims for constitutionally inadequate medical care. If he was a convicted prisoner, the Cruel and Unusual Punishments Clause of the Eighth Amendment governs his § 1983 claims. *Bell v. Wolfish*, 441 U.S. 520, 536 n.16 (1979). Both require a plaintiff to satisfy two elements to state such a claim: (1) an "objective" element, establishing that the challenged conditions are sufficiently serious, and (2) a "mental" element, which requires a showing that the officer acted with at least deliberate indifference to the challenged conditions. *Id.*

The objective element of a deliberate indifference claim is the same for pretrial detainees and convicted prisoners – "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health" or safety, which "includes the risk of serious damage to 'physical and mental soundness.'" *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017) (citing *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013), and quoting *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972)); *see also Farmer v. Brennan*, 511 U.S. 825, 828 (1994) ("A prison official's 'deliberate indifference' to a substantial risk of

---

[1] Nothing in this order prevents Plaintiff from pursuing claims in connection with his medical treatment while in the custody of the New York State DOCCS.

serious harm to an inmate violates the Eighth Amendment."). When medical treatment was provided, but a complaint alleges that treatment was delayed or inadequate, the relevant concern is not "the severity of the prisoner's underlying medical condition," but the "particular risk of harm faced by a prisoner due to the challenged deprivation of care." *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003) (holding that issue was not whether HIV is a serious illness but whether the brief delay in obtaining HIV medication risked serious harm); *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (seriousness inquiry is focused on the alleged inadequacy).

The second element – the "subjective" or "mental" element – varies depending on whether Plaintiff is a pretrial detainee or convicted prisoner. A convicted prisoner must allege that a correction official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also [have] draw[n] the inference." *Darnell*, 849 F.3d at 32. By contrast, a pretrial detainee must allege only "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id*. at 35. Negligence is not a basis for a claim of a federal constitutional violation under § 1983. *See Daniels v. Williams*, 474 U.S. 327, 335-36 (1986); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986).

### 1.    Dr. Ulloa

Plaintiff alleges that Dr. Ulloa did not send him to an outside hospital on the day he slipped and was injured but instead sent him to the WCJ clinic. Because Plaintiff did receive medical care, the objective inquiry is focused on whether the failure to send him to an outside hospital for treatment posed a serious risk. See *Smith*, 316 F.3d at 186. Allegations that officials

have delayed care for reasons that are invalid can rise to the level of a constitutional violation. *See, e.g.*, *Archer v. Dutcher*, 733 F.2d 14, 16-17 (2d Cir. 1984) (officials deliberately delayed care as punishment for violations of discipline code).

Here, Plaintiff alleges that Dr. Ulloa did not send him to an outside hospital because other inmates with similar conditions had been treated at the hospital emergency room with nothing more than "Tylenol and Ace bandages." (ECF 13 at 7.) Such allegations are insufficient to allege that Dr. Ulloa had an improper motive in referring Plaintiff to the WCJ clinic or acted with deliberate indifference to Plaintiff's serious medical need.

Plaintiff further alleges that Dr. Ulloa (or Nurse Practitioner (NP) Lisa) should have sent him back to the hospital a second time for certain tests that NP Veronica had suggested; these allegations constitute a "mere disagreement over the proper treatment" that do not rise to the level of a constitutional claim for deliberate indifference. *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (holding that a "mere disagreement over the proper treatment" is not actionable under § 1983). Plaintiff's § 1983 claims against Dr. Ulloa for damages must therefore be dismissed.

### 2.    Dr. Jane Doe

Plaintiff alleges that the emergency room doctor declared his injury a "sprained ankle" after examining him and having x-rays taken but that she should have conducted further tests in the emergency room to determine if he had a torn Achilles tendon. He alleges that when he told her that he already knew that he didn't have any broken bones and that an x-ray wasn't the proper test for an Achilles tendon injury, she responded curtly. He also appears to challenge the fact that Dr. Jane Doe prescribed Tylenol for his pain, rather than stronger pain medication.

When a hospital contracts with the State to regularly provide medical services to prisoners, the hospital and its physicians generally qualify as state actors. *See, e.g., West v.*

*Atkins*, 487 U.S. 42, 54 (1988) (concluding that private physician providing medical services at a state prison hospital under a contract with the State was acting under color of state law). The Court therefore assumes for purposes of this order that Dr. Jane Doe qualifies as a state actor.

Nevertheless, Plaintiff's allegations that Dr. Jane Doe diagnosed him with a sprained ankle without conducting additional tests that he believes were necessary are insufficient to state a claim that she knew (or should have known) that he had a serious injury and acted with deliberate indifference to an excessive risk to his health. As with Plaintiff's claims against Dr. Ulloa, Plaintiff's allegations about Dr. Jane Doe's actions suggest a "mere disagreement over the proper treatment" that does not rise to the level of a constitutional claim for deliberate indifference. *Chance*, 143 F.3d at 703.

Likewise, Plaintiff's allegations that Dr. Jane Doe prescribed Tylenol but should have prescribed a stronger pain medication fail to state a claim for deliberate indifference. *See, e.g.*, *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) (holding that prescribing Motrin rather than stronger pain medication to treat broken wrist, with no concomitant allegation of "a culpable state of mind," falls short of claim for deliberate indifference); *Reyes v. Gardener*, 93 Fed. App'x 283, 284 (2d Cir. 2004) (holding that alternative medical plan incorporating weaker pain medication to treat inmate was "mere disagreement over the proper treatment" that failed to state a claim under § 1983) (internal quotation marks omitted). Plaintiff's § 1983 claims seeking damages from Dr. Jane Doe must therefore be dismissed.

### 3.    Nurse Practitioner Lisa

Plaintiff alleges that Defendant NP "Lisa" should have sent him back to the hospital emergency room for further tests him to determine whether he had an Achilles tendon injury and that she declined to give him stronger pain medication because only Tylenol was prescribed.

Plaintiff's § 1983 claims seeking damages from NP Lisa are dismissed for the reasons set forth above.

### 4.      Orthopedist

Plaintiff alleges that on an unspecified date, an outside orthopedist came to WCJ and "stated that [Plaintiff] had sustained a tear." (ECF 13 at 11.) Plaintiff told the orthopedist that on February 12, 2018, he had been unable to attend a medical appointment because "he could not bear the leg irons." (*Id.*) The orthopedist said that "he would personally put in [Plaintiff's] medical records 'not to put leg restraints on [Plaintiff's] injury" but that this was never done. (*Id.*) Allegations that medical personnel failed to include certain information in medical files suggest, at most, negligence; there are no allegations that the unidentified orthopedist acted intentionally or recklessly to impose the alleged condition. Plaintiff thus fails to state a claim for damages against the unidentified orthopedist, and the Court dismisses Plaintiff § 1983 claims for damages against John Doe orthopedist.

## C.      Claims Arising From Use of Leg Irons

On February 12, 2018, Correction Officer Ficarrotta and Sergeant Mabra refused to transport Plaintiff without leg irons on both legs. (ECF 13 at 9.) Plaintiff alleges that he told Officer Ficarrotta and Sergeant Mabra that he would "be in pain" if they used leg irons, and they would not transport Plaintiff when he refused to wear them. It is clear from the allegations of Plaintiff's complaint that as of February 12, 2018, nothing in his medical records prohibited the use of leg irons. Plaintiff's allegations thus are insufficient to plead that these Defendants knew or should have known that transporting him in leg irons risked serious harm to him.

Plaintiff asserts claims against Sergeant Meade for refusing to transport Plaintiff without leg irons on March 14, 2018. Although Plaintiff alleges that prior to March 14, 2018, John Doe orthopedist said that he would note that Plaintiff should be transported without leg irons, Plaintiff

acknowledges that such instructions were never included in his file. Plaintiff thus fails to state a claim against Sergeant Meade because Plaintiff's allegations are insufficient to plead that Defendant Meade knew or should have known that transporting Plaintiff in leg irons risked serious harm to him. The Court therefore dismisses Plaintiff's § 1983 claims for damages against Defendants Mabra, Ficarrotta, and Meade.

**D.      Denial of Grievances**

Plaintiff alleges that Assistant Warden Vollmer denied his grievance about not being transported without leg irons on the ground that "there are absolutely no medical restrictions . . . which preclud[e] the application of leg restraints" on Plaintiff. (ECF 13 at 11.) Plaintiff does not dispute the fact that there were no medical restrictions noted in his records, and his allegations thus do not state a claim for damages under § 1983 against Defendant Vollmer.

**E.      Conspiracy to Alter Medical Records**

Plaintiff alleges that Physician's Assistant Stoddard made two entries into Plaintiff's medical records that were false or related to other inmates. One entry indicated that Plaintiff had inflicted an injury on himself on an unspecified date, which Plaintiff suggests was intended to "creat[e] doubt [about his] cause of injury." (ECF 13 at 11.) Plaintiff also disputes an entry that at 7:05 p.m. on January 24, 2018, that is, on the same day as Plaintiff's slip-and-fall, he went to the clinic for a basketball-related injury. Captain Hermans denied Plaintiff's grievance about the erroneous entries on the ground that Physician's Assistant Stoddard had entered this information in Plaintiff's medical record in error due to a "computer glitch." Plaintiff theorizes that these notations in his medical records were part of a "cover up" intended to "undermine" any future lawsuit that Plaintiff might bring regarding his medical care.[2]

---

[2] It is irrelevant to a claim for constitutionally inadequate medical care whether the cause of Plaintiff's injury was a slip-and-fall on the stairs or an injury on the basketball court; the issue

A civil rights conspiracy requires an agreement between two or more actors to inflict an unconstitutional injury. *See Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002).[3] "This 'two or more actors' requirement cannot be satisfied where all of the alleged conspirators are employees of a single entity and acting within the scope of their employment as agents of that entity." *Anemone v. Metro. Transp. Auth.*, 419 F. Supp. 2d 602, 604 (S.D.N.Y. 2006). "[A]n exception to the doctrine applies when individual employees are "pursuing personal interests wholly separate and apart from the entity." *Id.* (citation omitted).

Here, Plaintiff's allegations that WCJ employees conspired to deprive him of his legal claim fail, among other reasons, because his claims are against employees of a single entity and acting within the scope of their employment. Moreover, Plaintiff does not allege that Defendants were pursuing some interest wholly separate and apart from those of WCJ. Plaintiff thus fails to state a claim that Defendants Stoddard and Hermans conspired to deprive him of his constitutional rights, and the Court dismisses Plaintiff's § 1983 claims against Defendants Stoddard and Hermans.

---

for a § 1983 deliberate indifference claim is whether the medical care satisfied a constitutional minimum, whatever the cause of the injury.

[3] "[T]o survive a motion to dismiss on his § 1983 conspiracy claim, [a plaintiff] must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002) (citation omitted); *see also Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) ("New York does not recognize an independent tort of conspiracy.").

**F.    Leave To Amend**

District courts generally grant a *pro se* plaintiff leave to amend a complaint to cure its defects, but leave to amend may be denied if the plaintiff has already been given an opportunity to amend but has failed to cure the complaint's deficiencies. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's amended complaint cannot be cured with a further amendment, the Court declines to grant Plaintiff another opportunity to amend.

## CONCLUSION

The Clerk of Court is directed to mail a copy of this order to Plaintiff and note service on the docket. The Court severs Plaintiff's claims against John and Jane Doe correction officers at Auburn Correctional Facility and transfers such claims under 28 U.S.C. § 1406 to the United States District Court for the Northern District of New York.

The Court dismisses Plaintiff's remaining claims under 42 U.S.C. § 1983 for injunctive relief as moot. The Court dismisses Plaintiff's § 1983 claims for damages as to all remaining defendants for failure to state a claim on which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). The Court declines, under 28 U.S.C. § 1367(c) to exercise supplemental jurisdiction over any state law claims that Plaintiff may be asserting.

SO ORDERED.

Dated:    May 18, 2021
              New York, New York

                                                    *Louis L. Stanton*
                                                    Louis L. Stanton
                                                    U.S.D.J.